John Jewitt, et. al. vs. Joseph F. M'Gowen.

### Fi. Fa.

A creditor who has obtained judgment against his debtor, and levied his execution upon property mortgaged to another person anterior to his judgment, and which mortgage has been properly recorded, can only sell the *equity of redemption*, of his debtor.

And *therefore*, such creditor, and not the mortgagee, is entitled to the proceeds of the sale under such execution.

A foreclosure of a mortgage, under the statute of Georgia, does not vest the absolute estate in the mortgagee; it only authorises a sale of the property, and the surplus, after payment of the mortgage and costs, belongs to the mortgagor.

### By LAW, Judge.

THE plaintiffs in the above cases having obtained judgments and issued executions, levied on and sold the negroes and cattle of the defendant to satisfy the same. The Sheriff having declined to pay over the moneys arising from the sale, in consequence of notices served upon him, to retain the proceeds subject to the order and distribution of the Court, a rule was taken against him to shew cause. In answer to which, it appears, that the negroes levied on and sold, were mortgaged to *F. D. Petit De Villers*, who became the purchaser of the property at Sheriff's sales, and contends, that as mortgagee, (his mortgage being foreclosed before the sale, and the execution lodged in the Sheriff's hands,) he is entitled to the money arising from the sale of the mortgaged property, in preference to the plaintiffs in the above cases. As by the shewing made, the negroes only were mortgaged, there can be no reason for refusing the application for payment over to the plaintiffs of the amount arising from the sale of the cattle, being $120, and which is accordingly so ordered.

To determine the conflicting claims between the mortgagee and plaintiffs in execution, to the proceeds of the mortgaged property,

it is necessary to enquire what was the interest in the mortgagor in the negroes, capable of being sold.   As a specific lien was created by the mortgage upon the negroes, intended to be a pledge or security for the debt due from the mortgagor to mortgagee, no subsequent judgment obtained against the mortgagor could defeat that lien—the property then could only be sold subject to the lien of the mortgagor, which mortgage could subsequently follow the property wheresoever and in whosoever hands it might be found, and re-sell it.   It is then obviously only the equity of redemption of the mortgagor which could be sold.   The mortgage was recorded, and besides this, which would have been sufficient notice, the attorney of the mortgagee attended the sale and gave express notice of the mortgage.   If a stranger or third person had purchased, and the mortgagee had previously agreed to abandon his lien and suffered the entire interest in the property to be sold, coming in for distribution of the proceeds according to priority of lien, there could be no objection to it; and in that case he would be paid according to the date of this mortgage.   But in this case, the property is sold subject to the mortgage, by which only its value above or beyond the sum for which it was mortgaged, would be obtained; the mortgagee becomes the purchaser of the equity of redemption, by which the whole estate becomes united in him, and if he may retain the sum bid for the equity of redemption, it must be at the manifest expense of the rights of the judgment creditors.   If the property is worth more than the sum for which it is mortgaged, the judgment creditors are entitled to it, and when sold subject to the mortgage, the amount which it brings is, for this purpose, its excess value above the mortgage.   None of the rights of the mortgagee are affected, he stands precisely in the situation in which he did, excepting that he has united the whole estate in himself by purchasing the equity of redemption.

In the case of *Jackson* vs. *Hull*, (10 Johnson's Rep. 481,) the creditor sued on the bond, (to secure which he held a mortgage) and obtained judgment and execution.   He levied upon the mort-

gaged premises, and sold them under his execution upon the judg-
ment, it was held that nothing was sold but the equity of redemp-
tion, and that the mortgagee might afterwards maintain ejectment
against the purchaser for the same premises.*

In the State of South Carolina, there have been several cases
upon the subject. The first is the case of the *Ex'ors of Ashe*
vs. *Ex'ors of Livingston*, in 1797, (2 *Bay's* Rep. 80.) That case
would seem to establish the rule in favor of the mortgagee to re-
ceive the money in this case, but as it is explained by the Consti-
tutional Court of South Carolina, in a case in 1 *McCord's* Rep.
399, *ex parte* the City Sheriff in 1821, it is made to turn upon the
preference given to a mortgage over a subsequent judgment by the
executor's Act of South Carolina, regulating the distribution of a
decedent's effects. And the mortgage in that case having been
made prior to the year 1791, when the Carolina statute was passed
affecting the rights and interests of mortgagees, it was considered
that upon default of payment, the estate became absolute in the
mortgagee, whose estate it was at the time of sale, although osten-
sibly sold as the property of the mortgagor. In the case under ad-
judication, the mortgage was foreclosed after the levy and before
the sale. It cannot, I think, however, be pretended, that the effect
of a foreclosure under the statute of Georgia, is to vest the abso-
lute estate in the mortgagee—it only authorises a sale of the pro-
perty, and directs the surplus after discharging the debt and costs
to be paid to the mortgagor. The case of *ex parte Jacob Stagg*,

---

* See *McGraw* vs. *McLanahan*, (1 Penn. Rep. 44.) *Contra*, (cited in 4 Kent's Com. 184,
note (*a*) 3d edit.)

It seems, that the mortgagee may be prohibited from proceeding at law to sell the equity of
redemption, *Tice* vs. *Annin*, (2 John. Ch. Rep. 125.)

The New York Rev. Stat. have *since* the case of *Tice* vs. *Annin*, carried the suggestion
therein contained into effect, and the same rule prevails in Massachusetts and North Carolina.
*Atkins* vs. *Sawyer*, (1 Pick. Rep. 351.) *Camp* vs. *Coxe*, (1 Dev. & Badg. 52. 4 Kent's Com.
184, note (*a*) 3d edit.)—(*Ed.*)

in 1 *Nott & McCord*, 405, would seem also to favor the claim of the mortgagee upon this motion, but it will be remarked in that case, that the only question raised was the priority of lien between the mortgage, and the judgment confessed on the same day, and the reason for that is assigned in the case already referred to in 1 *McCord's* reports, viz : that both parties had agreed that the whole interest in the land should be sold by the Sheriff, and that the money made should be paid as the Court should decide in favor of the lien. This was agreed to, because the property was not sufficient to satisfy the mortgage, and the equity of redemption was worth nothing.

In the case *ex parte*, City Sheriff, in 1 *McCord*, 399, we have a case altogether analagous with the present ; certain lots were mortgaged, and it (the mortgage) was recorded, subsequent to which, several suits were commenced against the same mortgagor, and judgments were obtained and executions lodged, and the lots in question were levied on and sold, and at the sale the mortgagee purchased them. The question was, whether the mortgagee or the other creditors were entitled to the money. In that case, after reviewing all the previous decisions, the Constitutional Court of South Carolina decided, that the judgment creditors were entitled to the money. For the reasons here assigned, aided by the authorities cited, I am of opinion, that the plaintiffs in the above cases, are entitled to the money in this case in the Sheriff's hands. It is therefore *ordered*, that the rule be made absolute, and that the Sheriff do forthwith pay over to the plaintiffs the proceeds of said sales.\*

Counsel—Millen & Charlton, for plaintiffs—C. S. Henry, for mortgagor.

---

\* Judge *Henry*, at the December Term, 1837, of the *Liberty* Superior Court, (in the case of *Maxwell*, Sheriff, vs, *Barnard*, adm'r of *Law*, et. al.) decided, that *after* foreclosure of a mortgage of personal property, the legal title was in the *mortgagee*, and that there was no equity of redemption to levy on.—(*Ed.*)